UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DIANE S. PARTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | No. 1:10-CV-202<br><br>*Collier / Lee* |

# REPORT AND RECOMMENDATION

Plaintiff Diane S. Parton ("Plaintiff") was denied disability insurance benefits ("DIB") by the Commissioner of Social Security ("Commissioner" or "Defendant"), and she now appeals that denial.[1] Plaintiff contends the Administrative Law Judge ("ALJ") who heard her claim erred in evaluating the credibility of her testimony. Plaintiff seeks an award of benefits, or in the alternative, a remand for the consideration of new evidence. Plaintiff has moved for judgment on the pleadings [Doc. 14], and Defendant has moved for summary judgment [Doc. 18]. For the reasons stated below, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 18] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED WITH PREJUDICE**.

## I. ADMINISTRATIVE PROCEEDINGS

In December 2005, at the age of 46, Plaintiff applied for DIB, alleging disability due to back problems and nerves since December 4, 2004 (Tr. 77, 88). In her application, she stated she was unable to walk, stand, or sit for long periods of time, and she was unable to lift (Tr. 88). These

---

[1] This action is brought pursuant to 42 U.S.C. § 405(g).

limitations, she alleged, kept her from performing her job as a factory laborer, which required her to lift and carry stove parts (Tr. 88-89). She was interviewed in person, and the interviewer noted that she had no difficulty sitting, standing, or walking (Tr. 85). Plaintiff's claim was denied initially and on reconsideration (Tr. 60-70). A hearing was held before an ALJ on March 18, 2008 (Tr. 25). By decision dated September 10, 2008, the ALJ concluded Plaintiff was not disabled (Tr. 22). On May 28, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1).

## II.     DISABILITY DETERMINATION PROCESS

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden of proof at the first four steps to show the extent of her impairments, but the burden shifts to the Commissioner at step five to show there are jobs the claimant can perform despite her impairments.

2

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). In order to make the required findings at steps four and five, the ALJ must assess the claimant's residual functional capacity ("RFC"), which refers to the maximum level of work the claimant can perform on a "regular and continuing basis"—i.e., for 8 hours per day, five days per week. Social Security Ruling ("SSR") 96-8p.

### III. BACKGROUND

#### A. Plaintiff's Allegations of Disability

Plaintiff alleged she stopped working as a laborer in a stove factory on December 30, 2004, because of her back problems, which she described as including "spasms," pain, and associated right hip pain and left foot numbness (Tr. 88, 106, 121-22, 132). She reported she could not lift over ten pounds, sit for a long time, bend, or stoop (Tr. 111-12, 114). Plaintiff also stated she could not mop, vacuum, or carry laundry, but she was able to "pick up" around the house, and do "some shopping" with her husband (Tr. 108, 111-12). She also reported attending church (Tr. 138). For pain relief, she used Lidoderm patches, warm baths, and heating pads (Tr. 133). At the hearing, Plaintiff described the "emotional toll" her physical pain had caused (Tr. 33). She stated that nothing made her happy, that she talked to herself, and that she saw things she was not sure were really there (Tr. 33-34). She also complained that her memory was very poor (Tr. 34-35).

#### B. Medical Treatment and Opinion Evidence

In July 2001, Plaintiff was diagnosed with a disc extrusion with compressive radiculopathy (Tr. 159). Because she did not respond well to conservative treatment, she underwent a diskectomy in October 2001 (Tr. 150, 157, 161). After performing that surgery, Timothy Strait, M.D., prescribed physical therapy and Lortab for pain (Tr. 156). The surgery was a success, and Dr. Strait

3

reported Plaintiff was "anxious to return to work" (Tr. 155-56). Two months later, Plaintiff had completed her physical therapy and had "only minimal low back discomfort" (Tr. 155). Notably, Plaintiff was not pleased with Dr. Strait's care. She alleged he "never gave [her] pain pills after surgery" (Tr. 120), and that he "messed up [her] back" (Tr. 196). Dr. Strait did prescribe Lortab for pain, however, along with physical therapy (Tr. 156). In addition, Plaintiff's aunt, who helped Plaintiff complete a function report during the application process, wrote that Dr. Strait was "not willing to help [Plaintiff] with her pain and depression" (Tr. 141). Nonetheless, Plaintiff was able to return to work following her surgery (Tr. 29), and she apparently continued working through 2004 (Tr. 26).

Plaintiff received sporadic treatment for various complaints over the next several years (Tr. 162-72), but she did not complain again of back and hip pain until December 2005 (Tr. 154, 163). At that time, Plaintiff returned to see Dr. Strait, and she indicated that she was having "difficulty acquiring work due to her previous lower back surgery" (Tr. 154). She asked Dr. Strait to assist her in obtaining disability benefits (Tr. 154). Dr. Strait's examination revealed minimal restriction of the lumbar spine and straight leg raise was "absent" bilaterally.[2] Dr. Strait also noted that he observed Plaintiff leaving his office, and she had no difficulty climbing down a ledge and walking to her car (Tr. 154). Dr. Strait concluded there was no evidence of an impairment warranting total disability (Tr. 154).

In connection with her application for benefits, Plaintiff received a consultative examination by Thomas Mullady, M.D., in February 2006 (Tr. 173-76). Plaintiff told Dr. Mullady her chief

---

[2] A straight-leg raise test checks for radiculopathy, or damage to spinal nerves. *Massey v. Comm'r of Soc. Sec.*, 2011 WL 383254, *4 n.1 (6th Cir. 2011) (unpublished). In context, Dr. Strait's note that straight leg raise was "absent" appears to mean that the test results were negative.

4

complaint were painful "twitches" in her lower back and buttocks (Tr. 173). During his examination, Dr. Mullady asked Plaintiff to bend forward, but she replied, "I do not do this." (Tr. 174). However, straight leg raising was permitted to 80 degrees in both legs with a "minimal amount" of pain (Tr. 174). Range of motion in all other joints was normal (Tr. 174). Plaintiff's muscle strength was normal in all extremities; her deep tendon reflexes were present and equal; there were no sensory deficits; balance was normal; and she walked without an assistive device (Tr. 175). While Dr. Mullady noted that imaging studies showed "marked narrowing of L5-L5 and L5-S1 interspaces," he also observed that Plaintiff "could have made greater effort in cooperating" during his physical examination (Tr. 175). Based on his findings, Dr. Mullady opined Plaintiff could lift ten pounds occasionally but could not lift any amount of weight frequently, and that she could stand and/or walk at least two hours and sit about six hours during a workday (Tr. 175).

The following month, reviewing physician C. Hancock, M.D., opined that Dr. Mullady's limitations were "not supported" (Tr. 183). Dr. Hancock opined instead that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could sit about six hours in a workday and could stand and/or walk for an equal amount of time (Tr. 178). Dr. Hancock explained that Plaintiff had not sought treatment consistently and she had no significant limitation of motion (Tr. 178). Dr. Hancock believed Plaintiff's allegations were "not fully credible" in light of the medical evidence (Tr. 182).

After an almost-two-year hiatus from treatment, Plaintiff again received care for low back pain in October 2007 (Tr. 191). She stated that her pain radiated to all her toes and her feet felt like they were "asleep," but she denied any paresthesias (Tr. 191). On examination, James Kelly, D.O., found that she had some pain with palpation in her low back, but her straight leg raise test was

5

negative (Tr. 191). In addition, her reflexes were physiologic; she had no edema; and she was able to toe and heel walk (Tr. 191). Plaintiff declined further tests, and Dr. Kelly recommended she see a chiropractor (Tr. 191). If Plaintiff did not improve, however, Dr. Kelly noted she would need EMG testing (Tr. 191). In December 2007, Plaintiff told Dr. Kelly that chiropractic therapy was helping "initially," but was no longer helping (Tr. 223). At that appointment, Plaintiff denied any radicular pain or paresthesias (Tr. 223). She complained of stiffness in the mornings and after sitting for 10-15 minutes (Tr. 223). Dr. Kelly discussed stretching exercises with Plaintiff, but did not order any further tests (Tr. 223). Plaintiff saw Dr. Kelly again in January 2008 for low back pain "without radicular pain or paresthesias" (Tr. 222). She reported she had been unable to do her stretching exercises due to stiffness (Tr. 222).

After her hearing before the ALJ, in April 2008, Plaintiff received an MRI of her lumbar spine,[3] which showed a "[b]road-based central disc protrusion at L5/L5," with disc material abutting the L5 nerve roots (Tr. 220). The MRI also showed that there was no disc reherniation at L5/S1, where Plaintiff had received the 2001 surgery (Tr. 220). There was, however, a "broad-based disc/osteophyte complex" at that level, and there was "[m]oderate neuroforaminal stenosis" at both the L4/L5 and L5/S1 levels (Tr. 220). That same month, Plaintiff sought treatment for depression due to her reported inability to do everyday activities (Tr. 221). She was prescribed Wellbutrin (Tr. 221).

During the hearing, the ALJ ordered two additional consultative examinations (Tr. 38). Dr.

---

[3] Defendant argues that this MRI report ought not be considered by the Court because it was not in the record before the ALJ. As Defendant points out, the April 2008 report was submitted to the Appeals Council in November 2008 (Tr. 214-216), after the ALJ's September 2008 decision (Tr. 22). It had previously been submitted, however, along with other medical records in May 2008 (Tr. 219-20).

Mullady performed a second consultative physical examination in April 2008 (Tr. 205-13). As Plaintiff points out, Dr. Mullady did not have the benefit of reviewing Plaintiff's April 2008 MRI when he examined her (Tr. 207). During his examination, Dr. Mullady found no peripheral edema, but the range of motion in Plaintiff's lumbar spine was limited to 20 degrees forward flexion and zero degrees extension (Tr. 206). Straight leg raising was permitted only to 70 degrees bilaterally with complaints of severe pain (Tr. 206). Still, Plaintiff's muscle strength and balance were normal; her deep tendon reflexes were present and equal; and there were no sensory deficits (Tr. 207). Dr. Mullady observed Plaintiff walking down a long hallway without difficulty, and he noted she was not using an assistive device to walk (Tr. 207). Dr. Mullady offered an opinion that was similar to, but slightly more restrictive than his previous one. He believed that Plaintiff could lift ten pounds occasionally (Tr. 208). Further, he opined she could sit for six hours per workday, four hours at a time, stand 2 hours per workday, 30 minutes at a time, and walk one hour per workday, 15 minutes at a time (Tr. 209). He also assigned several manipulative and postural restrictions (Tr. 210-11).

Art Stair, M.D., performed a consulatative mental examination in May 2008 (Tr. 195-203). Plaintiff claimed to be "really mad and depressed" and stated she did not want to be around people (Tr. 196). She also stated she did not know if she had ever received any psychiatric or psychological treatment (Tr. 196). Dr. Stair observed that Plaintiff "appear[ed] to have difficulty maintaining a logical and coherent train of thought," but he did not believe it was "a legitimate problem." (Tr. 197). Dr. Stair administered five assessments, all of which "suggest[ed] malingering" (Tr. 198). He opined, "If [Plaintiff] does have any type of psychological problem or memory problem, it is almost certain that she has significantly exaggerated them." (Tr. 198).

7

### C. Vocational Expert Testimony and ALJ's Findings

The ALJ found that Plaintiff had two severe impairments—lumbar disc disease, postoperative status, and depression—but that none of her impairments met or equaled the criteria for any presumptively disabling impairments (Tr. 15). Despite her impairments, the ALJ found Plaintiff retained the RFC to perform light work, limited to unskilled work with rare contact with the public, and further restricted by several postural limitations and a 30-minute sit/stand option (Tr. 16). In making his RFC finding, the ALJ considered Plaintiff's allegations about the severity of her symptoms, but concluded they were not entirely credible (Tr. 17). With that RFC, a vocational expert ("VE") testified that Plaintiff could still perform about 40% of assembly jobs and hand packer jobs (Tr. 35-37). Based on the VE's testimony, the ALJ found that Plaintiff could not perform any of her past work, but could perform other work, and she was therefore not disabled (Tr. 19-22).

As an epilogue, Plaintiff represents that she applied again for disability in November 2008 and was awarded benefits [Doc. 15 at Page ID # 39].

## IV. ANALYSIS

Plaintiff raises two issues in this appeal. She argues primarily that the ALJ erred in rejecting her testimony as not fully credible. In the alternative, she asks for a remand to the Commissioner, stating, "[i]t is apparent from the medical evidence subsequent to the ALJ's decision that Plaintiff's condition has only regressed further."

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). Nonetheless, the court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Evidence submitted to the court after the close of administrative proceedings cannot be

9

considered for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Similarly, where the claimant presents new evidence to the Appeals Council, but the Appeals Council declines to review the ALJ's decision, that new evidence may not be considered during review on the merits. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Instead, the new evidence can be considered only for purposes of remand pursuant to sentence six of 42 U.S.C. § 405(g), which authorizes the court to remand a case for further administrative proceedings "if the claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

### B. ALJ's Credibility Findings

Plaintiff contends that the ALJ's credibility finding was against the weight of the evidence, and that the ALJ "misconstrued the evidence by downplaying the longevity and intensity of [Plaintiff's] pain." The ALJ did not discredit all of Plaintiff's allegations. Rather, his RFC finding allowed for a sit/stand option, which corresponds to Plaintiff's claimed inability to sit for extended periods of time, and rare contact with the public, which corresponds to Plaintiff's alleged misanthropy (Tr. 16). Nevertheless, the ALJ did not believe Plaintiff's symptoms were as severe as she alleged (Tr. 17).

Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d

968, 974-75 (6th Cir. 1984). The ALJ cannot base his credibility finding on intuition, but must give "specific reasons for the finding on credibility, supported by the evidence in the case record," which are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the [claimant's] statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p (1996); *Rogers*, 486 F.3d at 247-48. "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach*, 2011 WL 63602, at *11. According to agency regulations, the ALJ must consider a claimant's credibility in light of all the evidence in the record, including the claimant's own statements regarding the nature and severity of her symptoms, her daily activities, her prior work record, her physicians' medical diagnoses, prognoses, and opinions, her medications and other treatments, and any other relevant factors. SSR 96-7p.

The ALJ offered a lengthy discussion of the reasons for his incredulity. First, the ALJ reasoned that the objective medical evidence and Plaintiff's course of treatment did not support her allegations (Tr. 17). Specifically, the ALJ noted that Dr. Strait found "no evidence" of a disabling impairment in 2005 (Tr. 18). Further, the ALJ acknowledged Dr. Mullady's findings that Plaintiff had a reduced range of motion of the lumbar spine, but he noted that Plaintiff had normal gait, normal muscle strength, and no sensory or reflex deficits (Tr. 17-19). In addition, the ALJ noted that Plaintiff's treatment was sporadic, with "significant gaps" between visits (Tr. 19). He also noted that her infrequent visits did not allow for a steady supply of medications, despite the fact she had been prescribed some medications (Tr. 19). The ALJ observed that Plaintiff's treatment was largely conservative, consisting only of medication as needed, application of heat, and chiropractic

treatment, and that she refused to pursue further testing when suggested by Dr. Kelly (Tr. 19).

Plaintiff attacks both of these bases for the credibility finding. She first argues that the medical evidence was in fact consistent with her testimony. Plaintiff contends the ALJ's credibility assessment was "countered by" the April 2008 MRI. The ALJ did not specifically mention that MRI in his opinion, but it is immaterial to his credibility assessment. The ALJ did not conclude that Plaintiff did not have an objective medical basis for her complaints. To the contrary, he found that her "medically determinable impairments could . . . produce the alleged symptoms" (Tr. 17). The MRI provides further support for this finding that Plaintiff *could* have experienced the symptoms she claimed, but it does not show that Plaintiff did in fact experience such severe symptoms. The ALJ's finding to the contrary rests on his discussion of Plaintiff's physical examinations and conservative course of treatment. With respect to this latter ground, Plaintiff contends that the ALJ overlooked the aggressive treatment—surgery—Plaintiff received in 2001. Plaintiff's contention simply has no merit. The ALJ acknowledged the surgery but noted that Plaintiff had returned to work afterward and that her treatment since the surgery had been infrequent and conservative. That analysis is fully supported by the record.

Furthermore, the ALJ gave several other reasons for his credibility finding, which Plaintiff does not challenge and which are substantial in themselves. The ALJ found it significant that Plaintiff was observed climbing down a ledge and walking to her car with no difficulty after an appointment with Dr. Strait (Tr. 18). He also noted that Plaintiff was not entirely cooperative with Dr. Mullady's first examination, refusing to bend forward (Tr. 18). Furthermore, the ALJ described the results of Plaintiff's mental health examination, in which she was found to be either exaggerating or blatantly malingering (Tr. 19). And finally, the ALJ found that while Plaintiff alleged she can

12

perform only limited daily activities, she had nonetheless been able to provide for her own personal care needs, visit with her parents, shop, prepare light meals, perform light housekeeping chores, and attend church (Tr. 19).

I **FIND** that the ALJ's reasons were factually correct and supported his reasoning. Therefore, given the ALJ's well-explained and detailed assessment of Plaintiff's credibility, I **FIND** no error in the ALJ's RFC assessment.

### C. Sentence Six Remand

In the alternative, Plaintiff has asked for a remand for the "further evaluation" of Plaintiff's pain, which is claimed to have "regressed further." The Court construes this as a request for a sentence six remand for the consideration of new evidence. "In the case of a subsequent favorable determination, a sentence six remand is appropriate only if the plaintiff can show new substantive evidence that might have changed the outcome of the prior proceeding, and good cause for failing to bring this evidence in the original proceeding." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009). Plaintiff has not identified what "new substantive evidence" supports her claim and she has not developed the argument in any meaningful way. The issue is therefore waived.

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND:**[4]

(1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**.

(2) Defendant's motion for summary judgment [Doc. 18] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE**.

                                             s/ *Susan K. Lee*
                                             SUSAN K. LEE
                                             UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).